UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC RUDOLPH,<br><br>                    Plaintiff,<br><br>       v.<br><br>WELLPATH, et al.,<br><br>                    Defendants. | CIVIL ACTION NO. 3:22-CV-00382<br><br>(MEHALCHICK, M.J.) |

# MEMORANDUM

Presently before the Court is a motion to dismiss the amended complaint filed by Defendants Wellpath, Rajinder Malhi, M.D. ("Dr. Malhi"), Fawn Baldauf, CRNP, Gabrielle Nally, PA-C ("PA Nally") (collectively, "Defendants"). (Doc. 33). Plaintiff Eric Rudolph ("Rudolph"), an inmate incarnated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this action by filing a complaint on March 10, 2022. (Doc. 1). Rudolph filed an amended complaint on July 26, 2022. (Doc. 31). On April 11, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 21). For the following reasons, Defendants' motion to dismiss will be DENIED.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Rudolph initiated this civil rights action on March 10, 2022, by filing a complaint pursuant to 42 U.S.C. §1983 against Defendants. (Doc. 1). On June 6, 2022, Defendants filed a motion to dismiss. (Doc. 24). In response, Rudolph filed the amended complaint on July 26, 2022. (Doc. 31).

In the amended complaint, Rudolph alleges that he was transferred to SCI-Huntingdon on or about July 13, 2020, and shortly thereafter, he complained to PA Nally of

vision issues and requested an eye exam. (Doc. 31, ¶¶ 10-11). Rudolph underwent Snellen vision tests on July 28, 2020, and August 6, 2020. (Doc. 31, ¶¶ 13-14). RN Price, a non-defendant, then allegedly indicated that Rudolph should be referred to the eye clinic at the prison. (Doc. 31, ¶ 15). Rudolph alleges that he was next seen on October 14, 2020, by CRNP Baldauf who noted that he had failed his Snellen vision screening in August and was awaiting an optometry appointment. (Doc. 31, ¶¶ 16-17). Then, Rudolph alleges that he saw Dr. Malhi on December 17, 2020, at which time he complaint about his decreased vision. (Doc. 31, ¶ 19). As a result, Rudolph was referred to an ophthalmologist, which Rudolph alleges was the same referral that CRNP Baldauf made two months earlier. (Doc. 31, ¶ 21). An ophthalmology consultation request was then made, and Rudolph was scheduled for an appointment on January 25, 2021. (Doc. 31, ¶ 22). On January 25, 2021, Rudolph alleges that he attended an appointment with Dr. Christopher Patitsas, an ophthalmologist, who diagnosed him with chronic angle closure glaucoma in both eyes. (Doc. 31, ¶ 24). Dr. Patitsas then recommended a treatment plan for both eyes, including surgical intervention with a laser. (Doc. 31, ¶¶ 25-26). Thereafter, Rudolph alleges PA Nally placed an order for him to be restricted to the bottom tier of the prison due to his poor vision to avoid falling on the stairs. (Doc. 31, ¶ 31). Rudolph also alleges that on October 18, 2021, Dr. Patitsas found that he had severe advanced end-stage chronic angle closure glaucoma in both eyes. (Doc. 31, ¶ 32). Rudolph contends that his vision will likely never return to normal and had he been referred to the optometrist for intervention in July or August, he would have avoided months of vision loss caused by the advancing glaucoma. (Doc. 31, ¶¶ 33-34). Rudolph asserts claims for deliberate indifference to a serious medical need in violation of the Eighth Amendment in Counts I and II, and claims of state law professional negligence in Count III. (Doc. 31, at 11-

17). The motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 33; Doc. 34; Doc. 35).

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions . . .'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The

3

court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

## III. DISCUSSION

Defendants move to dismiss Rudolph's complaint for two reasons.[1] First, Defendants argue that the amended complaint fails to state cognizable claims for a violation of his Eighth Amendment rights against Defendants Baldauf, Dr. Malhi, and PA Nally. (Doc. 34, at 3-4). Second, Defendants contend Rudolph has failed to state a viable Eighth Amendment *Monell* claim against Wellpath. (Doc. 34, at 9). In opposition, Rudolph argues the amended complaint does state a claim against Defendants for violating his Eighth Amendment rights. (Doc. 35, at 3-13).

### A. COUNT I – EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS BALDAUF, DR. MALHI, AND PA NALLY

First, Defendants move to dismiss the amended complaint on the grounds that Rudolph's allegations and grievance records illustrate that Defendants Baldauf, Dr. Malhi, and PA Nally "had minimal involvement with respect to his eyecare, and even so, they sought further treatment as appropriate," and "timely" responded to Rudolph's medical needs. (Doc. 34, at 4-5). Defendants aver that "[a]lthough the case Defendants sought might have been ultimately delayed, this appears to have occurred as a result of actions by those outside of

---

[1] Defendants do not address Rudolph's state law negligence claims, arguing that "should no Federal claims survive past 12(b)(6), the Court [should] not exercise its supplemental jurisdiction over any remaining state claims pursuant to 28 U.S.C. § 1367(c)(3). As discussed *infra*, the Court finds that Rudolph has alleged sufficient facts to allege Eighth Amendment violations against Defendants. Therefore, the Court will deny Defendants' motion to dismiss and continue to exercise its supplemental jurisdiction over Rudolph's state law professional negligence claims in Count III of the amended complaint.

their control, i.e. either personnel of the Department of Corrections or eyecare providers who are separate entities." (Doc. 34, at 4). In response, Rudolph argues that because he alleges a six-month delay in treating his known vision deterioration, a reasonable jury could conclude that Rudolph's care was delayed for non-medical reasons. (Doc. 35, at 6). Further, Rudolph contends "[t]e reality is, Defendants had the ability and authority to place an order for the outside consultation which Mr. Rudolph finally received." (Doc. 35, at 8). Thus, Rudolph asserts that "[t]here is no reason to wait six months for an eye clinic which was not open, nor any justification for blaming RN Price." (Doc. 35, at 8).

Rudolph asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. (Doc. 31). Section 1983 provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

To sustain a claim under the Eighth Amendment for medical deliberate indifference against Defendants Baldauf, Dr. Malhi, and PA Nally, Rudolph must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.
>
> *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in a prison setting, Brown is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or even negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, No. 99-CV-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *See e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'); *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. *See e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); *Bronson v. White*, No. 05-CV-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); *Gindraw*, 967 F. Supp. 833. Instead, courts have defined the precise burden that an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

8

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his ... care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

*James*, 230 F. App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw*, 967 F. Supp. at 836 (citations omitted).

In order to allege a cognizable Eighth Amendment violation, Rudolph is required to plead facts showing that he suffered from a serious medical need, Defendants were subjectively aware of facts from which the inference could be drawn that failure to provide treatment for that need posed a substantial risk of serious harm or undue suffering, and that they drew that inference but disregarded the risk anyway. In Count I of the complaint,

9

Rudolph asserts that Defendants were deliberately indifferent to his loss of vision, a serious medical need, in violation of the Eighth Amendment. (Doc. 31, at 11-12). Rudolph contends that Baldauf, PA Nally, and Dr. Malhi knew of his serious medical needs and "[d]espite this knowledge, the individual medical defendants, through their inaction, delayed and denied Mr. Rudolph the individualized care his serious medical needs required—namely, a consultation with an eye specialist—for over six months." (Doc. 31, ¶¶ 70-71). Specifically, Rudolph alleges that:

    a) On July 13, 2020, he informed PA Nally that his vision was "growing worse" and requested an eye exam (Doc. 31, ¶ 11);

    b) On July 28, 2020, he performed poorly on a first "Snellen" eye examination (Doc. 31, ¶ 13);

    c) On August 6, 2020, he performed poorly on a second "Snellen" eye examination (Doc. 31, ¶ 14);

    d) On October 14, 2020, Baldauf noted that he had "failed" his eye exam and was awaiting an optometry appointment (Doc. 31, ¶ 17);

    e) On November 30, 2020, he reported his concerns about vision loss to mental health provider, Mark Peters (Doc. 31, ¶ 18);

    f) On December 17, 2020, he spoke with Dr. Malhi and reported decreased vision, which had been degenerating for months (Doc. 31, ¶ 19);

    g) On January 25, 2021, he was seen by ophthalmologist, Christopher Patitsas, who diagnosed him with chronic angle closure glaucoma in both eyes, and prescribed him a prompt course of treatment (Doc. 31, ¶ 24).

    h) On January 25, 2021, and February 16, 2021, Dr. Patitsas performed a YAG Peripheral Iridotomy operation in both eyes. (Doc. 31, ¶¶ 25-29).

    i) On October 18, 2021, Dr. Patitsas examined him and found that he had severe advanced end-stage chronic angle closure glaucoma in both eyes. (Doc. 31, ¶ 32).

Rudolph claims that "[b]y denying Mr. Rudolph timely individualized care and treatment of his diminishing vision, the individual defendants have denied him treatment which was

consistent with the medical standard of care, and have by omission imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment." (Doc. 31, ¶ 72). Further, Rudolph asserts that "[t]he denial of timely medical care for Mr. Rudolph's diminishing vision violated all standards of decency, contrary to the Eighth Amendment." (Doc. 31, ¶ 73).

Defendants argue that they "timely" responded to Rudolph and that Rudolph's allegations and grievance records illustrate that Defendants Baldauf, Dr. Malhi, and PA Nally "had minimal involvement with respect to his eyecare, and even so, they sought further treatment as appropriate," and "timely" responded to Rudolph's medical needs. (Doc. 34, at 4-5). Specifically, Rudolph filed Grievance No. 912075 against the medical department at SCI-Huntingdon, stating:

> I [am] filing this due to the neglect of medical on 1-25-21 at 7:30 am. I was told that I have glaucoma in both eyes, not cataracts. Dr. Malhi never did a proper eye exam. He only use[d] a light and said cataracts. This is a violation of the 8th Amendment, deliberate indifference. Because the doctor knew he didn't do the proper exam. Deputy Spyker also knew of this by denying grievance 900914. The outside doctor said this could have been prevented if seen sooner and not waiting 6 months. 90% damage in my right eye and 35% damage in left eye. I kept putting sick call slips in and nothing was done until 12-17-2[0] and still had to wait another month to see the outside doctor 1-25-21. My relief is $200,000 for emotional distress and pain and suffering. I need all records saved, all call outs from July of 2020 to 12-17-20. I meet the criteria for 8th Amendment Violations.
>
> (Doc. 31, ¶ 37; Doc. 33-2, at 5).

Defendants aver that "[a]lthough the case Defendants sought might have been ultimately delayed, this appears to have occurred as a result of actions by those outside of their control, i.e. either personnel of the Department of Corrections or eyecare providers who are separate entities." (Doc. 34, at 4).

11

The Court finds that taking Rudolph's allegations as true, the amended complaint sufficiently alleges deliberately indifferent conduct by Defendants Baldauf, PA Nally, and Dr. Malhi under *Estelle*. Based on the facts alleged in the amended complaint, the Court can reasonably infer that Rudolph's visual impairments were more than just "slight." Rudolph alleges that on July 13, 2020, he informed PA Nally that his vision was "growing worse," and requested an eye exam, but he was not seen by an ophthalmologist until January 25, 2021. (Doc. 31, ¶¶ 11, 24). Glaucoma is an illness that can lead to blindness without proper treatment. *Parrish v. Corizon Health, Inc.*, No. CV 15-01813, 2016 WL 4123937, at *4 (E.D. Pa. Aug. 3, 2016). Furthermore, during the six months since he initially raised his vision loss with the medical staff at SCI-Huntingdon, Rudolph alleges that "he has permanently-impaired vision which makes even activities like using the stairs dangerous, which is directly attributable to the unjustifiable delay in his diagnosis and treatment." (Doc. 31, ¶ 35). Thus, Rudolph has provided sufficient allegations to show that his optometric needs were serious. *See Parker v. Boring,* No. 1:15-CV-01784, 2016 WL 3381287, at *8 (M.D. Pa. May 19, 2016), *report and recommendation adopted,* No. 1:15-CV-1784, 2016 WL 3227250 (M.D. Pa. June 13, 2016). Since Rudolph asserts that on January 25, 2021, an ophthalmologist diagnosed him with chronic angle closure glaucoma in both eyes and performed a YAG Peripheral Iridotomy operation in the left eye immediately, and then in the right eye "very soon," it follows that the alleged failure of Baldauf, PA Nally, and Dr. Malhi to provide a consultation with an ophthalmologist for six months sufficiently pleads deliberate indifference. (Doc. 31, ¶¶ 24-29); *see Mazariegos v. Monmouth Cty. Corr. Inst.*, No. CIV.A. 12-5626 FLW, 2014 WL 1266659, at *8 (D.N.J. Mar. 25, 2014) (denying motion to dismiss where defendants delayed treatment for seven months); *Estelle,* 429 U.S. at 105. When read in the context of Rudolph's allegations,

the Court finds that the amended complaint adequately pleads a claim of deliberate indifference to his serious medical need for the timely care of an appropriate specialist doe his vision issues against Defendants Baldauf, PA Nally, and Dr. Malhi.

Accordingly, Defendants' motion to dismiss is denied as to Count I of the amended complaint.

### B. COUNT II – EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT WELLPATH

Next, Defendants argue that Wellpath should be dismissed because Rudolph has failed to set forth sufficient allegation under *Monell* that it maintained a policy, custom, or practice of deliberate indifference to his serious medical needs, including his eye care. (Doc. 34, at 9). Defendants contend there are no factual allegations specific to Wellpath in the amended complaint and that the amended complaint only makes conclusory allegations that Wellpath has a collegial review process wherein it is decided whether any specialty care is necessary and that this process resulted in any alleged delay for Rudolph being seen by an ophthalmologist. (Doc. 34, at 11). In opposition, Rudolph argues the complaint sets forth a *Monell* claim against Defendant Wellpath for two policies and practices that contributed to the delay he suffered in the care and treatment of his vision loss. (Doc. 35, at 10).

To state a claim against Wellpath, Rudolph must allege that the violation of his rights was caused by a Wellpath policy, custom, or practice. As the Court has observed in the past:

> In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Monell"), the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. *Id.* at 695, 98 S.Ct. 2018. Accordingly, a Monell claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. *See id.*; *see also Carreno v. City of Newark*, 834 F.Supp.2d 217, 231 (D.N.J. 2011). "Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir.

13

2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). It is essential to a Monell claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

*Hunter v. Prisbe*, 984 F.Supp.2d 345, 353 (M.D. Pa. 2013).

While *Monell* initially addressed the question of *governmental* institutional liability, subsequent case law has extended these legal tenets to claims of *corporate* institutional civil rights liability. On this score it is well-settled that:

> [P]rivate corporations that contract with the state to provide services also cannot be subjected to liability under § 1983 on the basis of *respondeat superior.* See *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality cannot be liable under § 1983 on a theory of *respondeat superior*). Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom. *Natale*, 318 F.3d at 583-84; *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Griggs v. Dauphin County Prison*, No. 1:06-0823; 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008); *Miller v. City of Phila.*, No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827, at *4 (E.D. Pa. Nov. 26, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) ). As the Third Circuit has explained, a
>
> > policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Mason v. PrimeCare Med., Inc.*, No. 1:14-CV-1680, 2017 WL 1386198, at *8 (M.D. Pa. Apr. 18, 2017) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

Custom may also be established by evidence that demonstrates knowledge or acquiescence. *Beck*, 89 F.3d at 971 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)).

Case law construing *Monell* and its corporate progeny makes it clear, however, that a single act by an agency head can in proper circumstances define agency policy or custom and establish institutional civil rights liability. Thus, a government policy or custom can be established in two ways. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A plaintiff may establish that a course of conduct constitutes a 'custom' when, though not authorized by law, "such practices of . . . officials [are] so permanent and well settled" that they operate as law. *Monell*, 436 U.S. at 690. In either instance, the plaintiff has the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citing *Andrews*, 895 F.2d at 1480).

As the Supreme Court has observed: "it is plain that [institutional] liability may be imposed for a single decision by . . . policymakers under appropriate circumstances." *Pembaur,* 475 U.S. at 480. In this setting institutional liability attaches whenever the decisionmaker possesses final authority to establish policy with respect to the action ordered. *Penbaur,* 475 U.S. at 481. "Accordingly, proof that a[n agency's] authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the [agency] acted culpably. Similarly, the conclusion that the action taken or directed by the . . . authorized decisionmaker itself violates federal law will also determine that the [agency]

15

action was the moving force behind the injury of which the plaintiff complains." *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. 397, 405 (1997).

Upon consideration of Rudolph's allegations, the Court finds that he sufficiently alleged facts that would permit a finding of institutional corporate culpability. In Count II of the amended complaint, Rudolph first alleges "Wellpath has established a policy and practice which does not permit inmates to automatically receive the medical care which is prescribed and/or ordered by medical providers." (Doc. 31, ¶ 78). Rudolph avers that "[i]nstead, inmates may only receive medical consultations and/or treatment outside the prison, which has been first requested then and approved by the regional medical director, in a process known as 'collegial review,'" which is a "system is to ensure that Wellpath controls the number of medical consultations and medical care outside the prison facility, for which it is required to bear the cost." (Doc. 31, ¶¶ 79-80). Next, Rudolph alleges that Wellpath "established a practice of permitting inmates, with known serious medical conditions, to linger for months without any effort to expedite the required next step of care." (Doc. 31, ¶ 81). Rudolph avers that "Wellpath does not require its staff or medical providers to timely follow up with patients, to ensure that known serious medical conditions are being treated as ordered," and "grants its staff *carte blanche* to delay care without fear of negative employment consequences." (Doc. 31, ¶¶ 82, 84). As a result of these two practices of Wellpath, Rudolph alleges "inmate care is routinely delayed within the Department of Corrections, sometimes for months, without any medical justification for the delay." (Doc. 31, ¶ 85). At the outset of this litigation, where the Court simply considers the pleadings, the Court finds that these averments satisfy the requirement of pleading "that a[n agency's] authorized decisionmaker has intentionally

deprived a plaintiff of a federally protected right [which] necessarily establishes that the [agency] acted culpably." *Brown*, 520 U.S. at 405.

In sum, "questions of motive and intent, policy and custom are integral to the resolution of [Rudolph]'s Eighth Amendment corporate culpability claims." *Bennett v. PrimeCare Med. Inc.*, No. 3:18-CV-517, 2018 WL 6072126, at *9 (M.D. Pa. Sept. 14, 2018), *report and recommendation adopted,* No. 3:18-CV-00517, 2018 WL 6062306 (M.D. Pa. Nov. 20, 2018). These questions are not amenable to resolution on the pleadings alone, and Rudolph has alleged sufficient well-pleaded facts to state a plausible claim for relief against Wellpath under *Monell*. "Whether [Rudolph] can prove what he has pleaded must await another day, and another court proceeding or motion in which we may look beyond the pleadings themselves." *Bennett*, 2018 WL 6072126, at *9. Therefore, at this stage of litigation, where the Court must simply assess the quality of a complaint, rather than the quantity of a plaintiff's proof, Rudolph's federal constitutional claims will be permitted to proceed forward.

Accordingly, Defendants' motion to dismiss is denied Count II of the amended complaint.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. (Doc. 33).

An appropriate Order follows.

BY THE COURT:

Dated: March 17, 2023

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**